*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0046**

Denise M. Blomker,
Relator,

vs.

U. S. Federal Employees,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 24, 2015
Affirmed
Toussaint, Judge**[*]

Department of Employment and Economic Development
File No. 32577376-3

Denise M. Blomker (pro se appellant)

U. S. Federal Employees (respondent)

Lee B. Nelson, Tim Schepers, Department of Employment and Economic Development,
St. Paul, Minnesota (for respondent DEED)

    Considered and decided by Hudson, Presiding Judge; Bjorkman, Judge; and

Toussaint, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**TOUSSAINT**, Judge

Relator Denise Blomker challenges the unemployment-law judge's (ULJ) determination that she is ineligible for unemployment benefits because she was terminated for employment misconduct. Because of relator's March 25, 2014 conduct, grabbing and twisting her supervisor's arm, and because relator was warned, but continued to copy upper management in e-mails, the ULJ's determination that relator was terminated for misconduct is supported by substantial evidence. We affirm.

## DECISION

We will affirm a ULJ determination if "[t]he ULJ's findings are supported by substantial evidence and provide the statutorily required reason for her credibility determination." *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007) (setting out factors to consider in making credibility determinations). Whether an employee committed a particular act is a question of fact. *Id.* We review a ULJ's factual findings in the light most favorable to the decision. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). "As a result, this court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Peterson v. Nw. Airlines, Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008).

The purpose of chapter 268 is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). A benefits applicant who was discharged for employment misconduct is ineligible for unemployment benefits. Minn.

Stat. § 268.095, subd. 4(1) (2014). Employment misconduct includes "any intentional, negligent, or indifferent conduct . . . that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat. § 268.095, subd. 6(a)(1) (2014).

Refusing to follow "an employer's reasonable policies and requests" generally constitutes employment misconduct. *Schmidgall*, 644 N.W.2d at 804. "[A]n employee who intentionally physically contacts another in anger engages in employment misconduct," even if the conduct is not extreme. *Potter v. N. Empire Pizza, Inc.*, 805 N.W.2d 872, 877 (Minn. App. 2011), *review denied* (Minn. Nov. 15, 2011). In *Potter*, this court concluded that "angry physical contact" such as poking, even if lasting "only a moment," supports an employment-misconduct determination. *Id.* at 875-77 (quotation marks omitted).

Relator argues that she was discharged as retaliation for numerous prior Equal Employment Opportunity Commission (EEOC) complaints alleged against her employer, the Department of the Interior–Fish and Wildlife Service (DOI). DOI stated that it discharged relator for inappropriate conduct on March 25, 2014 when she inappropriately grabbed her supervisor, and for repeatedly failing to follow a supervisory directive to stop copying upper management on e-mails "unless [upper management personnel] specifically asked to be copied." The ULJ determined that relator was discharged for insubordination and inappropriate conduct for failing to follow supervisory directives and inappropriately grabbing her supervisor during an argument on March 25.

Both relator and DOI testified that relator touched her supervisor, B.J., while they argued on March 25, 2014. Relator attempted to defend her conduct, testifying that she grabbed B.J.'s finger because she was "afraid for [her] own physical wellbeing." Relator's supervisor testified that relator grabbed her forearm with both hands and twisted. The ULJ found B.J.'s testimony more credible than relator's testimony and found B.J.'s testimony was supported by the evidence in the record.[1] Upon careful review of the evidence submitted regarding the incident, including affidavits by DOI employees who heard portions of the argument, we conclude that there is ample evidence in the record that relator touched her supervisor in anger. We therefore conclude that the ULJ did not err in determining that relator was terminated for employment misconduct for inappropriate conduct on March 25, 2014.

The ULJ also determined that relator's refusal to follow supervisory instructions not to copy upper management "was insubordinate, disruptive to the work place and displayed clearly a serious disregard of [DOI's] interest and of standards of behavior they had a right to expect of [relator] as an employee." Relator concedes that her supervisor had directed her not to copy upper management when they did not need to be involved. Relator testified that her former supervisor sent "several emails and letters too I think she had put down that I needed to cease and desist sending emails that pertained to things that were going on in migratory birds to upper management." Relator also testified that she had been previously suspended for not following this directive.

---

[1] Regardless of the reason, relator intentionally physically contacted her supervisor in anger, which is employment misconduct. *See Potter*, 805 N.W.2d at 877. The ULJ also determined that relator "failed to provide good cause for her conduct."

4

Relator's conduct demonstrates that she intentionally disregarded directives given to her by her supervisor. DOI contended that the directive not to needlessly copy upper management was reasonable because it "caused questions and confusion on the part of the recipients of these emails" because they were not sure whether they needed to respond or not and why they, in particular, were being copied. The ULJ's factual findings are supported by substantial evidence in the record, including relator's own testimony, and we conclude that the ULJ did not err in concluding relator's conduct constituted employment misconduct. *See Schmidgall*, 644 N.W.2d at 804 (stating that refusing to follow an employer's reasonable request generally constitutes employment misconduct).

**Affirmed.**